**Marvin GONZALES, Plaintiff–Appellant,**

v.

**ARMAC INDUSTRIES, LTD.,
Defendant–Third–Party–
Plaintiff–Appellant,**

and

**General Thermoforming Corporation,
Third–Party Defendant–Appellee.**

No. 1788, Docket 92–7150.

United States Court of Appeals,
Second Circuit.

July 27, 1992.

Present: NEWMAN, PRATT, and WALKER, Circuit Judges.

This appeal from the United States District Court for the Southern District of New York came on to be heard on the transcript of record and was argued by counsel.

On consideration of the briefs, appendix, record and the oral argument in this appeal, it is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a complete set of the briefs, appendix, and record filed by the parties with this court.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

No. 1788—August Term 1991

Docket No. 92–7150

Filed July 27, 1992

MARVIN GONZALES, *Plaintiff-Appellant,*

—against—

ARMAC INDUSTRIES, LTD., *Defendant–Third–Party–Plaintiff-Appellant,*

—and—

GENERAL THERMOFORMING CORPORATION, *Third–Party Defendant–Appellee.*

Before: NEWMAN, PRATT and WALKER, *Circuit Judges.*

Certificate to The New York Court of Appeals pursuant to McKinney's Revised 1991 New York Rules of Court § 500.-17(b) (certification of unsettled question of law)

Armac Industries, Ltd., a Massachusetts corporation doing business in the State of New York, is a manufacturer of thermoforming machines. Armac sold one of its machines to General Thermoforming Corporation (GTC) in 1983. On December 21, 1989, Marvin Gonzales, a GTC employee and a subject of Honduras, was severely injured while using this machine. Gonzales received worker's compensation benefits for this injury.

Gonzales brought a three-count suit against Armac in the United States District Court for the Southern District of New York. Jurisdiction was based on the federal diversity statute, 28 U.S.C. § 1332. Gonzales alleged, *inter alia,* that Armac had designed an unreasonably-dangerous product and that he had been injured as a result thereof. Armac, in turn, brought a third-party suit against GTC, alleging that GTC was liable for indemnification under a clause in the contract of sale between GTC and Armac, as well as for contribution under New York law.

Prior to trial, Gonzales and Armac entered into this agreement:

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the plaintiff and defendant that *the defendant hereby admits liability for two percent of any damages* sustained by the plaintiff and *as may be awarded by the jury herein,* and that the pleadings be deemed amended accordingly.

IT IS FURTHER STIPULATED AND AGREED that *the plaintiff shall not enforce any judgment against the defendant in excess of two percent of any total damages awarded by the jury* to the plaintiff herein, *except as loan arrangements*

*may be necessary* to permit the plaintiff to collect any monies from the third-party defendant in the event that there is an apportionment of liability against the third-party defendant by the jury.

IT IS FURTHER STIPULATED AND AGREED that this stipulation is not intended to require the third-party defendant to pay more or less than any amount apportioned against the third-party defendant by the jury herein, and that the third-party defendant shall only be required to pay its apportioned share.

IT IS FURTHER STIPULATED AND AGREED that this stipulation is not intended to prevent the third-party defendant from attempting to establish that the defendant is responsible for more than two percent of liability herein.

IT IS FURTHER STIPULATED AND AGREED that plaintiff and defendant consent to disclosure of this stipulation to the jury at trial, and that in the event that defendant chooses to produce an officer or employee of the defendant corporation to testify at trial (or in the event that such officer or employee testifies pursuant to subpoena) the third-party defendant shall have the right to examine the witness concerning this stipulation, its terms, and the basis for it.

IT IS FURTHER STIPULATED AND AGREED that the scope and effect of this stipulation be limited to the above-captioned matter, and that plaintiff shall not publicize same without consent of the defendant.

(emphasis added).

After disclosure of this agreement, GTC moved for summary judgment dismissing Armac's third-party contribution claim. The district court, 756 F.Supp. 165 (S.D.N.Y.1991), agreed with GTC and granted the motión. Relying principally on *Lettiere v. Martin Elev. Co.*, 62 A.D.2d 810, 406 N.Y.S.2d 510 (2d Dep't 1978), *aff'd,* 48 N.Y.2d 662, 421 N.Y.S.2d 879, 397 N.E.2d 390 (1979), the district court concluded that the above agreement was a "release from liability" within the meaning of N.Y.Gen.Oblig.Law § 15–108(c), because, among other reasons, it "allows Armac the benefits of settlement without forcing it to give up anything in return, in contravention of the purposes of § 15–108(c)." 756 F.Supp. at 168. The district court also noted that the agreement "seeks to get around the bar imposed by § 29 of the Workmen's Compensation Law." *Id.* Thus, the district court concluded that Armac, having obtained its "own release from liability", was not "entitled to contribution" from GTC. N.Y.Gen.Oblig.Law § 15–108(c). After this decision was rendered, the parties stipulated that "the fair and reasonable jury value of the case" was $500,000, a final judgment was entered, and Gonzales and Armac appealed.

Armac and Gonzales contend that the agreement was not a "release from liability", but was merely a vehicle to pave the way for a loan arrangement of the sort first suggested in 29 Syracuse L.Rev. 449, 488–89 (1978), and subsequently approved by the New York Court of Appeals in *Feldman v. New York City Health & Hosp. Corp.*, 56 N.Y.2d 1011, 453 N.Y.S.2d 683, 439 N.E.2d 398 (1982) (mem.), a summary reversal of the Appellate Division "for the reasons stated in the opinion of Justice Irving S. Aronin at Special Term", 107 Misc.2d 145, 437 N.Y.S.2d 491 (Sup.Ct., Kings Cty.1981). In support of this position, Armac and Gonzales have cited us to *Milton v. Molins Machine Co.*, No. 86 Civ. 4973 (RPP), 1989 WL 38706 (S.D.N.Y. Apr. 7, 1989), in which the district court, ruling on an agreement identical to the one reproduced above (but reached during, rather than prior to, trial), held that *Lambert Houses Redevelopment Co. v. HRH Equity Corp.*, 117 A.D.2d 227, 502 N.Y.S.2d 433 (1st Dep't 1986) led to the conclusion that such an agreement was a "liquidating agreement", not a "release from liability". Although the third-party defendant in *Milton* was, as here, the plaintiff's employer, the district court did not discuss the relationship of the facts of that case to the Workers' Compensation Law.

The parties have cited no New York case, and this court has found none, addressing the precise issue before us:

Whether a defendant manufacturer's pretrial agreement with an injured plaintiff, admitting liability for two percent of any damages a jury might award, and preventing plaintiff from enforcing against defendant any judgment in excess of 2% of plaintiff's total damages, is a "release from liability" within the meaning of § 15–108(c) of the General Obligations Law.

This question should be decided by the New York Court of Appeals for the following reasons:

(1) it requires the interpretation of New York statutes and caselaw, including the interplay between § 15–108 of the General Obligations Law—which, as our court has recently noted, raises "difficult issues" in the interpretation of "a statutory scheme built on compromises resulting in ambiguities, inconsistencies, and difficulties in administration". *In re Brooklyn Navy Yard Asbestos Litigation*, No. 91–9325, slip op. 5307, 5324 [971 F.2d 831, 841] (2d Cir. June 30, 1992)—and the rule of *Feldman v. New York City Health & Hosp. Corp.*, 56 N.Y.2d 1011 [453 N.Y.S.2d 683, 439 N.E.2d 398] (1982) (mem.), which in this case also implicates § 29 of the Workers' Compensation Law;

(2) these issues in turn involve a balancing of the competing policies of state law which underlie these statutes and cases, and the New York Court of Appeals is best situated to guide the growth of the jurisprudence in this area;

(3) all litigants engaged in third-party practice in New York would benefit from a clear statement on the breadth and applicability of the *"Feldman* doctrine", which itself originates from only a summary decision of the New York Court of Appeals; and

(4) two district courts within this circuit have reached contrary conclusions regarding the legal effect under New York law of the agreement reproduced above.

The question certified should be addressed "at this time", New York Rules of Court § 500.17(b), because it is the sole and dispositive issue in the case.

The foregoing is hereby certified to the Court of Appeals for the State of New York as ordered by the United States Court of Appeals for the Second Circuit.

Dated: New York, New York

This 27th day of July, 1992
/s/ ELAINE B. GOLDSMITH
Clerk,
United States Court of Appeals
for the Second Circuit.